```
------------------------------x
                              :
CARMEN MILAGROS VELAZQUEZ     :    Civ. No. 3:18CV01385(SALM)
                              :
v.                            :
                              :
NANCY A. BERRYHILL,          :    April 30, 2019
ACTING COMMISSIONER, SOCIAL   :
SECURITY ADMINISTRATION       :
                              :
------------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Carmen Milagros Velazquez ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff has moved to reverse or remand the Commissioner's decision. [Doc. #20]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner. [Doc. #27].

For the reasons set forth below, plaintiff's Motion to Reverse or Remand an Administrative Agency Decision **[Doc. #20]** is **DENIED,** and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #27]** is **GRANTED.**

# I. __PROCEDURAL HISTORY__[1]

Plaintiff filed concurrent applications for DIB and SSI on August 13, 2015, alleging disability beginning July 2, 2015. <u>See</u> Certified Transcript of the Administrative Record, Doc. #12, compiled on October 2, 2018, (hereinafter "Tr.") at 249-63. Plaintiff later amended her alleged onset date to October 17, 2016. <u>See</u> Tr. 276. Plaintiff's applications were denied initially on October 15, 2015, <u>see</u> Tr. 117-39, and upon reconsideration on January 26, 2016. <u>See</u> Tr. 138-54.

On July 12, 2017, plaintiff, represented by Attorney Danielle Choi, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Deirdre R. Horton. <u>See</u> <u>generally</u> Tr. 32-55. Vocational Expert ("VE") Warren Maxim also appeared and testified by telephone at the administrative hearing. <u>See</u> Tr. 51-54; <u>see also</u> Tr. 346-50. On August 8, 2017, the ALJ issued an unfavorable decision. <u>See</u> Tr. 13-31. On June 12, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby making the ALJ's August 8, 2017, decision the final decision of the Commissioner. <u>See</u> Tr. 1-4. The case is now ripe for review under 42 U.S.C. §405(g).

---

[1] Pursuant to this District's Standing Order in Social Security Cases, plaintiff filed a Statement of Facts simultaneously with her motion. [Doc. #21]. Defendant also filed a Statement of Facts with her motion, which purports to "supplement[] and respond[] to Plaintiff's statement of facts." Doc. #27-2 at 1.

Plaintiff timely filed this action for review and now moves to reverse the decision of the Commissioner and to remand this matter for further administrative proceedings. [Doc. #20]. On appeal, plaintiff argues: (1) "The ALJ's residual functional capacity finding was the product of legal error and was unsupported by substantial evidence[;]" and (2) "The ALJ's credibility determination was unsupported by substantial evidence." Doc. #20-1 at 1, 2, 8. For the reasons stated below, the Court finds that the ALJ did not err as contended, and that her decision is supported by substantial evidence.

## II.   __STANDARD OF REVIEW__

The review of a Social Security disability determination involves two levels of inquiry. _First_, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. _Second_, the Court must decide whether the determination is supported by substantial evidence. _See Balsamo v. Chater_, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." _Richardson v. Perales_, 402 U.S. 389, 401 (1971) (quoting _Consolidated Edison Co. v. NLRB_, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. _See_

Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d

137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing <u>Carroll v. Sec. Health and Human Servs.</u>, 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." <u>Johnston v. Colvin</u>, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing <u>Peoples v. Shalala</u>, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507 (2d Cir. 2009)). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here;**

**rather, we must decide whether substantial evidence supports <u>the</u>** <u>**ALJ's decision**</u>." <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (citations omitted).

Finally, some of the Regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." <u>Smith v. Comm'r</u>, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" <u>Rodriguez v. Colvin</u>, No. 3:15CV1723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); <u>White v. Comm'r</u>, No. 17CV4524(JS), 2018 WL 4783974, at *4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." (citation omitted)).

## III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §§404.1520(c), 416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him

> disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). The Residual Functional Capacity ("RFC") is

~ 8 ~

what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.   **THE ALJ'S DECISION**

Following the above-described evaluation process, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from October 17, 2016, the amended alleged onset date, through the date of" her decision, August 8, 2017. Tr. 25. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of October 17, 2016. See Tr. 18. At step two, the ALJ found that plaintiff had the severe impairments of ischemic heart disease and connective tissue

disease. See Tr. 19. The ALJ found plaintiff's "vaginal intraepithelial neoplasia and status post hysterectomy[]" to be non-severe impairments. See id.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. See Tr. 20. The ALJ specifically considered Listings 4.04 (ischemic heart disease) and 14.06 (undifferentiated and mixed connective tissue disease). See id. The ALJ next found that plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional climbing of ramps, stairs, ladders, ropes, or scaffolds with frequent balancing and occasional stooping, kneeling, crouching, and crawling. She must avoid even moderate exposures to respiratory irritants such as dusts, fumes, gases, etc. She is limited to frequent handling and fingering.

Id. At step four, the ALJ concluded: "The claimant is capable of performing past relevant work as an account reconciliation clerk and a cashier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity[.]" Tr. 24. Thus, the ALJ determined that plaintiff "has not been under a disability, as defined in the Social Security Act, from October 17, 2016, the amended alleged onset date, through the date of [her] decision[.]" Tr. 25.

## V.   **DISCUSSION**

Plaintiff asserts that the ALJ erred in assessing her RFC and credibility. The Court addresses each argument in turn.

### A.   Residual Functional Capacity Determination

Plaintiff raises many arguments in support of the assertion that "[t]he ALJ's residual functional capacity finding was the product of legal error and was unsupported by substantial evidence." Doc. #20-1 at 3.[2] Defendant, addressing each of those arguments, responds that substantial evidence supports the ALJ's RFC determination. See Doc. #27-1 at 4.

Generally, a plaintiff's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). The RFC is assessed "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. §§404.1545(a)(1), (3), 416.945(a)(1), (3). Bearing the above in mind, the Court turns to each of plaintiff's claimed errors.

### 1.   *Development of the Record*

Plaintiff contends that the ALJ failed to develop the record in two respects: (1) by failing to contact APRN McLynn Kumar to obtain a medical opinion with functional limitations;

---

[2] The Court references the page numbers reflected in the document's ECF header throughout this ruling.

and (2) by failing to order a consultative examination. See Doc.
#20-1 at 4-5. Defendant responds that the ALJ was not obligated
to recontact APRN Kumar or to order a consultative examination.
See Doc. #27-1 at 7-9. Plaintiff did not respond to defendant's
arguments on these points in her reply brief. See generally Doc.
#28.

"Because a hearing on disability benefits is a non-
adversarial proceeding, the ALJ generally has an affirmative
obligation to develop the administrative record." Perez v.
Chater, 77 F.3d 41, 47 (2d Cir. 1996); see also Swiantek v.
Comm'r of Soc. Sec., 588 F. App'x 82, 84 (2d Cir. 2015).
However, "where there are no obvious gaps in the administrative
record, and where the ALJ already possesses a complete medical
history, the ALJ is under no obligation to seek additional
information in advance of rejecting a benefits claim." Rosa v.
Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citation and
internal quotation marks omitted). Accordingly, the duty to
develop the administrative record is triggered "only if the
evidence before [the ALJ] is inadequate to determine whether the
plaintiff is disabled." Walsh v. Colvin, No. 3:13CV687(JAM),
2016 WL 1626817, at *2 (D. Conn. Apr. 25, 2016) (internal
quotation marks and citation omitted).

a)    APRN Kumar

APRN Kumar authored a letter dated March 13, 2017, which generally discussed plaintiff's impairments, and concluded: "Consideration for disability benefits for this patient could definitely be warranted." Tr. 774. The letter did not contain a function-by-function assessment of plaintiff's physical capabilities, nor did it state, as plaintiff contends, that "[p]laintiff's impairments and their related symptoms were severe enough to leave her disabled." Doc. #20-1 at 4. The ALJ afforded APRN Kumar's "opinion little weight, as it does not provide any functional abilities and discusses only reported symptoms, which are not reflected in treatment notes." Tr. 24. Plaintiff asserts: "Given the nature of APRN Kumar's knowledge of Plaintiff's condition, and the fact that there were no opinions from any examining or treating physicians, the ALJ could have contacted Counselor Stacie to request functional limitations." Doc. #20-1 at 4 (sic).[3]

---

[3] The reference to "Counselor Stacie" appears to be a remnant of a prior motion from which sections of plaintiff's motion were presumably cut and pasted. This is the first of many references to items that have no place in this appeal. For example, plaintiff's motion refers to "mental health issues[,]" Doc. #20-1 at 5, which are not at issue. Plaintiff abandoned her claim that depression contributed to her disability at the reconsideration level of the administrative proceedings. See Tr. 86 ("She does not wish to pursue a psych element to claim."). Plaintiff's motion also refers to the "ALJ's Step 5 Finding." Doc. #20-1 at 9. This case was decided at step four. See Tr. 24-

"Assessing whether it was legal error for an ALJ to fail to request clarification from a treating physician is a case-specific inquiry that turns on whether an ALJ could reach an informed decision based on the record." Prince v. Berryhill, 304 F. Supp. 3d 281, 289 (D. Conn. 2018); see also Sena v. Berryhill, No. 3:17CV912(MPS), 2018 WL 3854771, at *12 (D. Conn. Aug. 14, 2018) ("Remand for failure to develop the record is situational and depends on the circumstances of the particular case, the comprehensiveness of the administrative record, and whether an ALJ could reach an informed decision based on the record." (citation omitted)). "When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant, and plaintiff bears the burden of establishing such harmful error." Parker v. Colvin, No. 3:13CV1398(CSH)(JGM), 2015 WL 928299, at *12 (D. Conn. Mar. 4, 2015) (quotation marks omitted).

The circumstances of this case, including the fact that APRN Kumar is not an "acceptable medical source," inform the Court's analysis. The Regulations define "medical opinions" as

---

25. Although plaintiff's counsel need not reinvent the proverbial wheel for each of his pending cases, he would be wise to ensure that his motions completely conform to the facts of the particular case in which that motion has been filed.

"statements from <u>acceptable medical sources</u> that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§404.1527(a)(1), 416.927(a)(1) (emphasis added). Acceptable medical sources include, <u>inter alia</u>, licensed physicians, psychologists, optometrists, podiatrists, and speech-language pathologists. <u>See</u> 20 C.F.R. §§404.1513(a)(1)-(5), 416.913(a)(1)-(5). Nurse practitioners, such as APRN Kumar, are not acceptable medical sources and therefore may not provide medical opinions, as that term is defined by the Regulations. <u>See</u> <u>Wider v. Colvin</u>, 245 F. Supp. 3d 381, 389 (E.D.N.Y. 2017) ("[S]ince nurse practitioners are not listed as acceptable medical sources, they cannot be treating sources, and cannot even give medical opinions." (internal quotation marks omitted)); <u>accord</u> <u>Perez v. Berryhill</u>, No. 3:15CV01841(SALM), 2018 WL 948285, at *6 (D. Conn. Feb. 20, 2018) ("Some courts have found that an APRN standing alone may not issue a 'medical opinion.'"). Nevertheless, the Regulations provide that the ALJ <u>may</u> recontact a claimant's medical source, but she also "may choose <u>not</u> to seek additional evidence or clarification from a medical source if [she] know[s] from experience that the source either cannot or will not provide the

necessary evidence." 20 C.F.R. §§404.1520b(b)(2)(i),
416.920b(b)(2)(i) (emphasis added). Because APRN Kumar could not
give a "medical opinion," see 20 C.F.R. §§404.1527(a)(1),
416.927(a)(1), the ALJ did not err by failing to recontact APRN
Kumar for such an opinion, as the ALJ presumably knew that she
could "not provide the necessary evidence." Id.

That conclusion is further bolstered by the special
evidentiary weight afforded to the medical opinions of treating
physicians, which factors into the ALJ's duty to develop the
record. "In light of the special evidentiary weight given to the
opinion of the treating physician the ALJ must make every
reasonable effort to obtain not merely the medical records of
the treating physician but also a report that sets forth the
opinion of the treating physician as to the existence, the
nature, and the severity of the claimed disability." Hooper v.
Colvin, 199 F. Supp. 3d 796, 812 (S.D.N.Y. 2016) (internal
quotation marks omitted) (emphasis added) (quoting Molina v.
Barnhart, 04CV3201(GEL), 2005 WL 2035959, at *6 (S.D.N.Y. Aug.
17, 2005)). Opinions authored by nurse practitioners are not
entitled to such special evidentiary weight, and thus the
correlating duty to obtain their opinions is not as compelling.

Generally, where "the record contains sufficient evidence
from which an ALJ can assess claimant's residual functional

capacity, a medical source statement or formal medical opinion is not necessarily required." Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. 2017) (quotation marks and citations omitted); see also Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) ("[R]emand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity."). Here, there was sufficient evidence from which the ALJ could assess plaintiff's RFC, including: over 900 pages of medical records, many of which reflected mild to moderate findings on examination; plaintiff's testimony and reported activities of daily living; and the opinion of the state-reviewing, non-examining physician, Dr. Karen Sarpolis.

Additionally, plaintiff has failed to articulate how a function-by-function assessment authored by APRN Kumar would be "significant." Indeed, during the relevant time period, APRN Kumar saw plaintiff only two times, and findings on examination were generally benign. See Tr. 639-40 (November 2, 2016, examination reflecting "full range of motion of her axial and peripheral joints without any active synovitis, erythema, or warmth[,]" tenderness to her wrists, neck and right shoulder, and full strength); Tr. 721-22 (March 1, 2017, follow-up visit

at which plaintiff reported improved cervicalgia, knee pain improving with rest, and two weeks of sciatica). Prior to the relevant time period, APRN Kumar saw plaintiff on just a few occasions, and again, findings on examination were generally normal to mild. See, e.g., Tr. 359 (April 14, 2015, examination: "MSK: Joints without synovitis, erythema, or warmth. FROM of the axial and peripheral joints. 0/18 tender points. NEURO: Strength: 5/5[]"); Tr. 475-76 (October 28, 2014, examination: "MSK: Mild erythema noted of the second and third MCP and PIP joints of the right hand, mild tenderness to the wrist. Right knee pain with mild effusion. FROM of axial and peripheral joints. NEURO: Strength 5/5[]"). Although APRN Kumar could have provided more insight into plaintiff's impairments, the record does not support a finding that her opinion would have been more limiting than the RFC determined by the ALJ, or that the ALJ would have necessarily credited her opinion. Accordingly, there is no reasonable basis to believe that the ALJ's decision would have differed if she had the benefit of a function-by-function assessment from APRN Kumar. Plaintiff has not met her burden in that regard.

Therefore, the ALJ did not err by failing to obtain a more fulsome opinion from APRN Kumar.

b)    Consultative Examination

"Alternatively," plaintiff contends that the ALJ should have ordered a consultative examination because of "the lack of any examining source opinions, and the relatively outdated opinions from the State agency physicians." Doc. #20-1 at 4, 5. Defendant responds that the ALJ did not abuse her discretion by declining to order a consultative examination. <u>See</u> Doc. #27-1 at 8.

The Regulations provide: "If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled ..., we may ask you to have one or more physical or mental examinations or tests." 20 C.F.R. §§404.1517, 416.917. "The decision to purchase a consultative examination will be made on an individual case basis in accordance with the" Regulations. 20 C.F.R. §§404.1519, 416.919. A consultative examination may be purchased "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." 20 C.F.R. §§404.1519a, 416.919a.

"It can be reversible error for an ALJ not to order a consultative examination when an examination is required for an informed decision. However, an ALJ is not required to order

a consultative examination if the facts do not warrant or suggest the need for it." Tankisi, 521 F. App'x at 32 (internal citation omitted); accord Brown v. Colvin, No. 3:14CV1784(WIG), 2016 WL 2944151, at *3 (D. Conn. May 20, 2016). Here, the facts did not warrant or otherwise suggest the need for a consultative examination. The ALJ had the benefit of plaintiff's medical records for two years prior to the amended alleged onset date through May 2017, and the opinion of a state-reviewing non-examining physician[4] upon which to rely. After reviewing the medical evidence of record, each of the state-reviewing non-examining physicians (at the initial level of review and on reconsideration) determined that a consultative examination was not required. See Tr. 61, Tr. 89. Plaintiff points to no conflict, inconsistency, or ambiguity in the evidence that required resolution.[5] Indeed, as will be discussed, the record

---

[4] Plaintiff contends that this opinion is "outdated[.]" Doc. #20-1 at 5. The Court addresses that argument in the next section.

[5] Plaintiff cites to the case of Bethea v. Astrue, No. 10CV744(JCH), 2011 WL 977062 (D. Conn. Mar. 17, 2011), for the proposition that an examining source opinion is necessary "especially in the case with respect to mental health issues[.]" Doc. #20-1 at 5 (citing Bethea, 2011 WL 977062, at *11). As previously noted, plaintiff elected not to pursue a claim for disability on account of any alleged mental impairment. Accordingly, Bethea is not applicable to the particular circumstances of this case.

consistently reflected normal to mild findings on examination.

Accordingly, there is no error.

### 2. *Reliance on the State-Reviewing, Non-Examining Physician's Opinion*

Plaintiff next asserts that the ALJ erroneously relied on the opinion of the state-reviewing, non-examining physician, Dr. Sarpolis because she "did not have access to much of the evidence in this case, and the only updated evidence at the reconsideration was gynecological in nature." Doc. #20-1 at 6 (sic). Defendant responds that the ALJ appropriately relied on Dr. Sarpolis's opinion, which was not rebutted by the later-received evidence. See Doc. #27-1 at 5-6.

"[T]he opinions even of non-examining sources may override treating sources' opinions and be given significant weight, so long as they are supported by sufficient medical evidence in the record." Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 427 (S.D.N.Y. 2010); see also Little v. Colvin, No. 5:14CV63(MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." Camille

v. Colvin, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015) (citation and internal quotation marks omitted), aff'd, 652 F. App'x 25 (2d Cir. 2016); see also West v. Berryhill, No. 3:17CV1997(MPS), 2019 WL 211138, at *5 (D. Conn. Jan. 16, 2019) ("[T]he principle endures that an ALJ may not rely on the stale opinion of a non-examining consulting physician where subsequent evidence may alter those findings, as recognized by the Second Circuit and other judges in this district."). "However, a medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." Biro v. Comm'r of Soc. Sec., No. 6:17CV6098(EAW), 2018 WL 4666068, at *4 (W.D.N.Y. Sept. 28, 2018).

Although plaintiff fails to support her argument with a citation to any authority, there is case law in this District finding error when an ALJ relied on the opinion of a non-examining source who did not have the benefit of reviewing the entire record. See, e.g., Jazina v. Berryhill, No. 3:16CV01470(JAM), 2017 WL 6453400, at *7 (D. Conn. Dec. 13, 2017). Here, however, there is no indication that the later-received evidence "raise[s] doubts as to the reliability of Dr. [Sarpolis's] opinion." Camille, 652 F. App'x at 28 n.4.

On January 26, 2016, Dr. Sarpolis opined that plaintiff was capable of light work. See Tr. 91-94. Dr. Sarpolis based her opinion on the evidence then in the record, including, inter alia, medical records from plaintiff's primary care physician, plaintiff's gynecologist, New Haven Rheumatology (APRN Kumar), and Bridgeport Hospital. See Tr. 83-85; see also Tr. 89-90. In pertinent part, Dr. Sarpolis relied on treatment records from plaintiff's primary care physician and New Haven Rheumatology dated April 14, 2015 (Tr. 359), October 27, 2015 (Tr. 472), and December 23, 2015 (Tr. 529). See Tr. 93-94. Dr. Sarpolis also relied on records from plaintiff's gynecologist from late 2015 (Tr. 465, Tr. 497). See Tr. 94.

Plaintiff contends that the later-received evidence "shed[s] much light on Plaintiff's disabling impairments[]" and raises doubts as to the reliability of Dr. Sarpolis's opinion. Doc. #20-1 at 6. Plaintiff first relies on a November 2, 2016, treatment note authored by APRN Kumar. See id. (citing Tr. 639). At that visit, plaintiff complained of increased pain and stiffness, and reported that she no longer received relief from over-the-counter medications. See Tr. 639. APRN Kumar performed an examination of plaintiff's musculoskeletal system and noted plaintiff had "full range of motion of her axial and peripheral joints without any active synovitis, erythema, or warmth. She

had tenderness over her wrists as well as her neck. There is tenderness around the right scapula and pain on palpation of the right shoulder." Id. Plaintiff also demonstrated full strength. See id.

As previously noted, Dr. Sarpolis relied, in part, on a treatment note authored by APRN Kumar on April 14, 2015. See Tr. 94. APRN Kumar's examination of plaintiff on that date was remarkably similar to the one conducted on November 2, 2016. Compare Tr. 359 (APRN Kumar's examination of plaintiff on April 14, 2015), with Tr. 639 (APRN Kumar's examination of plaintiff on November 2, 2016). The April 14, 2015, examination of plaintiff's musculoskeletal system reflected: "Joints without synovitis, erythema, or warmth. FROM of the axial and peripheral joints. 0/18 tender points." Tr. 359. Plaintiff also demonstrated full strength on examination. Tr. 359.[6] The other records relied upon by Dr. Sarpolis reflected "WNL" as to plaintiff's extremities, and no synovitis, warmth or erythema,

_____

[6] Also before Dr. Sarpolis was a treatment record dated October 28, 2014, in which plaintiff complained of knee, hand, elbow, ankle pain and swelling. See Tr. 475. Nurse Kumar's examination of plaintiff on that date is similar to that conducted on November 2, 2016. See id. ("Mild erythema noted of the second and third MCP and PIP joints of the right hand, mild tenderness to the wrist, Right knee pain with mild effusion. FROM axial and peripheral joints. ... Strength 5/5[.]").

Tr. 472, and noted that on December 23, 2015, plaintiff was then "[d]oing well[.]" Tr. 529.

The records reviewed by Dr. Sarpolis are generally consistent with the later-received evidence. For example, in April of 2016, plaintiff reported that she "fel[t] well overall." Tr. 1143. On September 14, 2016, plaintiff again reported to her primary care doctor that she was "doing well." Tr. 550. On May 4, 2016, plaintiff complained of back pain radiating into her buttock, but an examination of her joints was normal. See Tr. 641. In January, April, May, June, July, September, and December of 2016, plaintiff denied any muscular or neurological issues. See Tr. 668, Tr. 672, Tr. 675, Tr. 687, Tr. 690, Tr. 693, Tr. 697, Tr. 700, Tr. 1144, Tr. 1161. Physical examinations during this same period reflected that plaintiff's "upper and lower extremities had full range of movement and had equal muscle strength." Tr. 669, Tr. 673, Tr. 676, Tr. 694, Tr. 701.[7] A physical examination of plaintiff conducted on February 14, 2017, revealed no abnormalities of plaintiff's neck and "no localized swelling of the leg and no tenderness." Tr. 665-66.

---

[7] Reports of gynecological exams dated October 14, 2015, and December 3, 2015, which were reviewed by Dr. Sarpolis, see Tr. 94, also reflect physical examinations in which plaintiff's "upper and lower extremities had full range of movement and had equal muscle strength." Tr. 465, Tr. 497.

Plaintiff next contends that 2017 imaging of plaintiff's back raises doubts as to the reliability of Dr. Sarpolis's opinion. See Doc. #20-1 at 6 (citing Tr. 792, Tr. 1298). In pertinent part, the imaging relied on by plaintiff reflected "L4-5 severe disc space narrowing ... mildly increased compared to 2011 study[,]" Tr. 792, and a "[r]ight foraminal disc extrusion at L3-4 which narrows the lateral recess and exerts mass effect on the traversing right L4 nerve root[,]" Tr. 1238. Although this evidence does confirm the existence of a back impairment, it does not reduce the reliability of Dr. Sarpolis's opinion. First, plaintiff did not claim disability on account of her alleged back pain. See Tr. 82, Tr. 93. Second, plaintiff complained of back pain only two times in 2016. See Tr. 641, Tr. 791. It was not until March 2017 that plaintiff complained of "sudden onset of constant episodes of severe right lower back pain[.]" Tr. 794; see also Tr. 721. Plaintiff's complaints continued from March 2017 to early May 2017. See, e.g., Tr. 796, Tr. 1249, Tr. 1250, Tr. 1254, Tr. 1259. In total, the record reflects just three months of continuous symptoms/complaints related to plaintiff's back pain and sciatica. By mid-to-late May, plaintiff no longer complained of sciatic back pain. See Tr. 1261, Tr. 1266. Indeed, she did not even mention back pain during the administrative hearing in July of 2017. See Tr. 40.

Because plaintiff's sciatica did not present for a continuous twelve months, and did not appear to have been expected to last for a continuous period of twelve months, it failed to meet the "duration requirement" for disability, and thus was not reasonably likely to have changed Dr. Sarpolis's opinion. See 20 C.F.R. §§404.1509, 416.909; see also Torres v. Berryhill, No. 6:17CV06281(MAT), 2018 WL 1784522, at *3 (W.D.N.Y. Apr. 12, 2018) ("To be considered disabling, an impairment must last or be expected to last for a continuous period of 12 months. Here, the impairment had not lasted for at least 12 months and was scheduled to be surgically alleviated. The Appeals Council therefore reasonably found that this evidence would not have a reasonable likelihood of changing the ALJ's decision." (internal citation and quotation marks omitted)). Indeed, the ALJ did consider "some complications from the claimant's sciatic back pain" and determined "there are no medical findings to show that the claimant's limitations, even considering these conditions, preclude the performance of work within the light residual functional capacity." Tr. 22-23. This bolsters the conclusion that the later-received evidence was not reasonably likely to have changed Dr. Sarpolis's opinion.

Thus, the ALJ permissibly relied on the opinion of Dr. Sarpolis, which was not rendered "stale" by the later-received evidence.

### 3. Reliance on Plaintiff's Activities of Daily Living

Plaintiff next asserts that "the ALJ uses Plaintiff's ability to care for her disabled family members against her, stating that this is consistent with light work capacity." Doc. #20-1 at 7 (citing Tr. 23). Defendant responds that the ALJ properly considered plaintiff's "efforts to care for her son[.]" Doc. #27-1 at 9.

To the extent plaintiff contends that the ALJ erred by considering plaintiff's activities of daily living when assessing plaintiff's RFC, that argument fails. The Regulations expressly provide that the RFC is determined "based on all the relevant evidence in your case record." See 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1) (emphasis added). That necessarily includes a claimant's reported activities of daily living.

If plaintiff alternatively contends that the ALJ placed inordinate weight on plaintiff's ability to care for her disabled son, that argument also fails. Although the ALJ did consider plaintiff's reported ability to care for her disabled son, she also considered other portions of plaintiff's

testimony, her medication regimen, the objective medical evidence, physical examinations and treatment records, the opinion evidence, and the statements from plaintiff's niece and daughter. See Tr. 20-24. For reasons that will be discussed in connection with the Court's analysis of plaintiff's credibility argument, the ALJ appropriately considered plaintiff's care for her disabled son and her testimony concerning the same. Accordingly, the ALJ did not err in her consideration of plaintiff's daily activities when determining plaintiff's RFC.

### 4. Manipulative Limitations

Plaintiff next asserts that ALJ erroneously limited plaintiff to "frequent handling and fingering[]" because that limitation "was not included in any physician's residual functional capacity assessment, and constitutes a gap in the medical record." Doc. #20-1 at 8. Defendant notes her disagreement with this aspect of plaintiff's argument, and asserts that Dr. Sarpolis's opinion supports the ALJ's findings regarding plaintiff's manipulative limitations.

"[A]dministrative law judges are unqualified to assess residual functional capacity on the basis of bare medical findings in instances when there is a relatively high degree of impairment." Palascak v. Colvin, No. 1:11CV0592(MAT), 2014 WL 1920510, at *8 (W.D.N.Y. May 14, 2014) (collecting cases)

(emphasis added). However, "it is not per se error for an ALJ to make the RFC determination absent a medical opinion ..., [and] remand is not necessary where 'the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.'" Ross v. Colvin, No. 1:14CV00444(WMS), 2015 WL 4891054, at *5 (W.D.N.Y. Aug. 17, 2015) (quoting Lewis v. Colvin, No. 13CV1072(WMS), 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014)). Indeed, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." House v. Astrue, No. 5:11CV915(GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (citation omitted).

Examinations of plaintiff's hands and wrists generally reflected tenderness and mild erythema. See Tr. 475, Tr. 639. Thus, because the medical evidence reflected "relatively little physical impairment" with respect to plaintiff's hands and wrists, the ALJ permissibly rendered a common sense judgment concerning plaintiff's manipulative limitations. Additionally, Dr. Sarpolis's opinion that plaintiff had no manipulative limitations, see Tr. 92, necessarily supports the ALJ's limitation to "frequent handling and fingering[,]" Tr. 20, given

the mild findings on examination. Thus, there is no error on this point.

### 5. *"Step 5" Finding*

Finally, plaintiff asserts that "[t]he ALJ's hypothetical question to the VE did not contain all of Plaintiff's limitations[,]" and thus, "cannot support the ALJ's Step 5 finding." Doc. #20-1 at 9.

As previously stated, this case was decided at step four of the sequential evaluation. See Tr. 24-25. At step four, when "deciding whether the claimant has satisfied th[e] burden [to show an inability to perform her past relevant work], the ALJ is allowed to rely on testimony from a vocational expert." Whitehouse v. Colvin, No. 3:13CV894(MPS), 2014 WL 4685187, at *4 (D. Conn. Sept. 19, 2014); see also Hackett v. Comm'r of Soc. Sec., No. 5:16CV692(ATB), 2017 WL 1373893, at *6 (N.D.N.Y. Apr. 13, 2017) ("At step four of the disability analysis, the ALJ has the option to rely on VE testimony.").

The ALJ's RFC determination is supported by substantial evidence, including the previously discussed mild to normal findings on examination, plaintiff's self-reported activities of daily living, and the opinion of Dr. Sarpolis. Because the ALJ's hypothetical to the VE adequately reflected the ALJ's ultimate RFC determination, see Tr. 51-52, the step four finding is

supported by substantial evidence and there is no error. <u>See</u>
<u>Robinson v. Berryhill</u>, No. 15CV6513(FPG), 2017 WL 1131967, at *6
(W.D.N.Y. Mar. 27, 2017) (Where the RFC determination was
supported by substantial evidence, and "the hypothetical
questions posed to the VE adequately reflected the RFC
determination[,] ... the ALJ was entitled to rely on the VE's
responses[,]" and thus, "the ALJ's step four analysis was
supported by substantial evidence." (internal citations
omitted)); <u>Lewis v. Colvin</u>, No. 1:13CV1152(MAT), 2017 WL
1046744, at *3 (W.D.N.Y. Mar. 19, 2017) ("The hypothetical posed
to the VE was consistent with Dr. Miller's findings as well as
the RFC found by the ALJ, and the ALJ was therefore entitled
to rely upon the VE testimony in making his step four
finding.").

   B.   <u>Credibility Findings</u>

      1.   *Plaintiff's Testimony*

Plaintiff next asserts that "the ALJ erred in failing to
make proper credibility findings as to Plaintiff's testimony."
Doc. #20-1 at 9. Defendant responds that plaintiff's arguments
"about the ALJ's credibility analysis ... are also meritless."
Doc. #27-1 at 10.

After summarizing plaintiff's testimony, and a "careful
consideration of the evidence," the ALJ found "that the

[plaintiff's] medically determinable impairments could reasonably be expected to produce the above alleged symptoms[,]" but that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." Tr. 21. The ALJ concluded that plaintiff's "statements have been found to affect [her] ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." Id. Before summarizing the relevant evidence of record, the ALJ noted that "while the [plaintiff's] impairments limit her overall level of functioning, the objective medical evidence does not establish that these impairments are disabling to the extent asserted since the [plaintiff's] amended alleged onset date of October 17, 2016[.]" Id.

"Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997) (quotation marks and citation omitted). The Regulations set forth a two-step process that the ALJ must follow in evaluating plaintiff's subjective complaints. First, the ALJ must determine whether the

record demonstrates that the plaintiff possesses a "medically determinable impairment that could reasonably be expected to produce [plaintiff's] symptoms, such as pain." 20 C.F.R. §§404.1529(b), 416.929(b). <u>Second</u>, the ALJ must assess the credibility of the plaintiff's complaints regarding "the intensity and persistence of [plaintiff's] symptoms" to "determine how [the] symptoms limit [plaintiff's] capacity for work." 20 C.F.R. §§404.1529(c), 416.929(c); <u>see generally</u> SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017) (describing two-step process used to evaluate a claimant's subjective symptoms).[8] The ALJ should consider factors relevant to plaintiff's symptoms, such as pain, including: (1) the claimant's daily activities; (2) the "location, duration, frequency, and intensity" of the claimant's pain or other symptoms; (3) any precipitating or aggravating factors; (4) the "type, dosage, effectiveness, and side effects of any medication" taken by claimant to alleviate the pain; (5) "treatment, other than

---

[8] "SSR 16-3p, which became effective March 28, 2016, supersedes SSR 96-7p, which was promulgated in 1996. On October 25, 2017, the SSA republished SSR 16-3p, detailing how to apply the ruling as it relates to the applicable date. Specifically, the SSA indicated that adjudicators should apply SSR 16-3p rather than SSR 96-7p when making a determination on or after March 28, 2016." <u>Kearney v. Berryhill</u>, No. 1:16CV652(MAT), 2018 WL 5776422, at *5 (W.D.N.Y. Nov. 2, 2018). Because the ALJ's decision is dated August 8, 2017, SSR 16-3p applies here. <u>See id.</u>

medication," that plaintiff has received for relief of pain or other symptoms; (6) any other measures plaintiff has used to relieve symptoms; and (7) other factors concerning plaintiff's "functional limitations and restrictions due to pain or other symptoms." Id. The ALJ must consider all evidence in the case record. See SSR 16-3P, 2017 WL 5180304, at *8.

Plaintiff first takes issue with the ALJ's finding

> that the normal lower extremity strength and lack of edema indicate that Plaintiff should be able to perform light work. However, just after this the ALJ notes complications from sciatic back pain and cardiac issues. These do not indicate that Plaintiff is any less credible, and are adverse inferences drawn from the medical opinion of a lay person.

Doc. #20-1 at 10 (internal citations omitted). Plaintiff's argument takes the ALJ's decision out of context. After summarizing the relevant evidence of record, the ALJ stated:

> The undersigned observes that none of the medical records detail any loss of strength such that the claimant could not lift and or carry to the extent of the light residual functional capacity. The findings for normal lower extremity strength and normal with no edema gait militate against the claimant's reports for limited standing and walking abilities. There are some complications from the claimant's sciatic back pain and history of cardiac issues, particularly with exercise tolerance. With that appreciated, there are no medical findings to show that the claimant's limitations, even considering these conditions, preclude the performance of work at the light residual functional capacity.

Tr. 22-23. The ALJ did not conclude that plaintiff's extremity strength and lack of edema indicated plaintiff was capable of

light work. Rather, the ALJ correctly observed that those objective medical findings contradicted plaintiff's subjective statements concerning her functional limitations. Compare, e.g., Tr. 37-38, Tr. 1270, with Tr. 639-40, Tr. 669, Tr. 673, Tr. 676, Tr. 694, Tr. 701. Second, the Court finds no error with the ALJ's reference to plaintiff's complaints of sciatic back pain and cardiac issues. It is apparent from the decision that the ALJ referred to these impairments to ensure that the RFC explicitly accounted for all of plaintiff's reported impairments. See Parker-Grose v. Astrue, 462 F. App'x 16, 18 (2d Cir. 2012) ("A RFC determination must account for limitations imposed by both severe and nonsevere impairments."). Finally, it is unclear to what plaintiff refers when she advances the argument that the ALJ drew an adverse inference from the medical record. See Doc. #20-1 at 10. In reply, plaintiff contends "that the ALJ's equation of the lack of edema with the ability to perform light work is based on speculation." Doc. #28 at 1. A plain reading of the ALJ's decision, however, indicates that she appropriately evaluated plaintiff's subjective complaints against the objective medical evidence. She did not equate the lack of edema to an ability to perform light work. Thus, there is no error on this point.

Plaintiff next contends that the ALJ erroneously discounted plaintiff's credibility by relying on the fact that plaintiff cared for her disabled son and was able to perform limited activities of daily living –- specifically driving and running errands. <u>See</u> Doc. #20-1 at 10. Plaintiff asserts that neither of those facts supports an adverse credibility determination. <u>See id.</u> at 10-11. The Court disagrees that the ALJ was wrong to consider those factors. "The law is clear that the ALJ may consider a claimant's purported activities of daily living for the purposes of a credibility determination. Indeed, the Commissioner's regulations expressly identify daily activities as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms." <u>Coger v. Comm'r of Soc. Sec.</u>, 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018) (internal citation and quotation marks omitted).

Here, the ALJ not only considered the activities with which plaintiff takes issue, but also considered other activities, along with the medical evidence, to assess plaintiff's credibility:

> As to the claimant's activities of daily living, she has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant did not allege any problems maintaining her own self-care and testified that she continues to care for her disabled son (Testimony). She stated that she worked 26.75 hours a week caring for her son. The record further shows that

the claimant was taking care of three of her adult
children all with special needs and was the sole
caregiver to her son with MS and two grandchildren
(Exhibit 2F/1, 18F and 20F/11). While this work activity
does not rise to the level of substantial gainful
activity as described in Finding 2, it does indicate
that the claimant functions at a higher level physically
and psychologically than alleged. She testified that she
drives and runs errands for her disabled son. The
claimant drove herself to the hearing. Overall, the
claimant's reported limitations are considered to be
outweighed by the aforementioned clinical findings and
treatment notes showing the effectiveness of treatment
(Exhibit 2F, 4F, 7F, 12F, 16F, and 24F).

Tr. 23. The ALJ appropriately considered plaintiff's role as a

caregiver for her son -- a role for which she was paid. See Tr.

45. Contrary to plaintiff's assertion, the ALJ did not "wholly

ignore[] the qualifications that Plaintiff placed on her ability

to engage in these activities." Doc. #20-1 at 7. Indeed, the ALJ

explicitly noted that based on plaintiff's testimony, her "work

activity for her son is an accommodated work setting[,]" Tr. 19,

and "does not rise to the level of substantial gainful

activity[.]" Tr. 23. The ALJ also noted that plaintiff receives

assistance from two aides who also care for her son. See Tr. 21.

The ALJ did not find that plaintiff was capable of substantial

gainful activity because of her role as a caretaker for her son;

rather, he found that said activity, along with the other

evidence of record, "indicate[d] that [she] functions at a

higher level physically ... than alleged." Tr. 23. Accordingly,

the Court finds no error in the ALJ's consideration of

plaintiff's role as a caretaker for her disabled son, particularly where, as here, it was just one factor considered in the credibility analysis. See, e.g., Davis v. Comm'r of Soc. Sec., No. 1:16CV1074(GTS)(WBC), 2017 WL 7049560, at *8 (N.D.N.Y. Nov. 20, 2017) (ALJ did not commit reversible error where, inter alia, "Plaintiff's ability to care for her son was only one factor the ALJ considered in his overall credibility analysis."), report and recommendation adopted, 2018 WL 557868 (Jan. 16, 2018).[9]

Plaintiff next contends that her ability to drive and run errands for her disabled son does not demonstrate her ability to work on a regular and continuing basis. See Doc. #20-1 at 10-11. Although that is generally an accurate assertion, the ALJ did not rely primarily on those activities in making her credibility determination. Rather, the ALJ considered the entire record and primarily relied on the "clinical findings and treatment notes showing the effectiveness of treatment[.]" Tr. 23 (citation omitted). Despite plaintiff's unwillingness to acknowledge this

─────────────

[9] In reply, plaintiff also asserts that her "ability to care for her disabled son does not mean that she could engage in similar work activity on a sustained basis." Doc. #28 at 2. The Court credits defendant's representation that plaintiff's work as a caretaker is classified at the medium exertional level. See Doc. #27-1 at 9. Thus, because the ALJ found plaintiff capable of light, as opposed to medium, work, she in fact found that plaintiff was not able to engage in similar work activity on a sustained basis.

fact, the record generally reflects mild findings both on examination and in diagnostic imaging. Those objective findings contradict plaintiff's allegations of complete disability, particularly in light of her admittedly caring for not just one disabled adult son, but two disabled adult children and two grandchildren. See Tr. 23; see also Tr. 359, Tr. 774, Tr. 798. The Second Circuit, in dicta, has stated that "when a disabled person gamely chooses to endure pain in order to pursue important goals, ...it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working." Balsamo, 142 F.3d at 81–82 (citation and internal quotation marks omitted). Here, however, and for reasons discussed in this decision, plaintiff's conduct and the medical evidence support a finding that plaintiff is capable of substantial gainful activity at the light exertional level.

Where the ALJ has identified specific reasons for her credibility determination, which are supported by substantial evidence in the record, the Court will not second-guess her decision. See Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010). Moreover, the ALJ had the opportunity to personally observe plaintiff and her testimony, something the Court cannot

do. Accordingly, the Court finds no error in the ALJ's assessment of plaintiff's credibility.

> 2.   *Statements of Plaintiff's Niece and Daughter*

Plaintiff next contends that "the ALJ gave improper rationale for discounting the statements of Plaintiff's niece and daughter." Doc. #20-1 at 11. Defendant responds by distinguishing the case upon which plaintiff primarily relies to support this argument. See Doc. #27-1 at 11-12.

Plaintiff's daughter, Ms. Jessica Soler, and niece, Ms. Mildred Lopez, each provided written statements in support of plaintiff's applications for benefits. See Tr. 333, Tr. 335. Ms. Soler's statement noted plaintiff's joint pain, inability to "correctly" walk, use of a cane, shortness of breath, fatigue, and limited activities of daily living. See Tr. 333. Ms. Lopez's statement also recounted plaintiff's reported pain and shortness of breath. See Tr. 335. With respect to those written statements, the ALJ stated:

> Finally, the undersigned grants some weight to the statements from Mildred Lopez, the claimant's niece and Jessica Soler, the claimant's daughter, to the extent the claimant has some limitations but to the extent that the claimant's limitations are disabling (Exhibit 14E, 15E and 19E). Since Ms. Lopez and Ms. Soler are not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of their statements is questionable. Moreover, by virtue of their relationship with the claimant, they cannot be considered a

disinterested third party witness whose testimony would
not tend to be colored by affection for the claimant and
a natural tendency to agree with symptoms and
limitations the claimant alleges. Again, more weight is
given to the treatment notes and objective clinical
findings as discussed above.

Tr. 24.

When evaluating a plaintiff's subjective symptoms,
including complaints of pain, "observations by ... other
persons[,]" such as those by Ms. Soler and Ms. Lopez, should be
taken into consideration. 20 C.F.R. §§404.1529(c)(3),
416.929(c)(3). Factors to consider when evaluating evidence from
such non-medical sources include "the nature and extent of the
relationship [with the claimant], whether the evidence is
consistent with other evidence, and any other factors that tend
to support or refute the evidence." SSR 06-03P, 2006 WL 2329939,
at 2 (S.S.A. Aug. 9, 2006); accord Galarza v. Berryhill, No.
3:18CV00126(SALM), 2019 WL 525291, at *12 (D. Conn. Feb. 11,
2019).

Plaintiff relies primarily on the case of Taylor v.
Berryhill, 17CV43(JCH), 2017 WL 5900955 (D. Conn. Nov. 30, 2017)
to support her argument that the ALJ erroneously discounted the
statements of Ms. Lopez and Ms. Soler because they "are not
medically trained to make exacting observations as to dates,
frequencies, types, and degrees of medical signs and symptoms,
or of the frequency or intensity of unusual moods or

~ 42 ~

mannerisms[.]" Tr. 24. Plaintiff submits Taylor held "that it was error to discount lay testimony using the exact language used by this ALJ." Doc. #20-1 at 11 (citing Taylor, 2017 WL 5900955, at *12). The Court credits defendant's argument that Taylor is dissimilar from the facts of this case. There, the court found that "the record evidence does not conflict with [the lay] testimony, and therefore does not constitute substantial evidence to support ALJ's credibility determination with respect to [the lay] testimony." Id. By contrast here, the ALJ gave "more weight ... to the treatment notes and objective clinical findings[]" than the statements of Ms. Soler and Ms. Lopez. Tr. 24. For reasons previously stated, those findings conflict in large part with the statements of Ms. Soler and Ms. Lopez. Compare, Tr. 335, Tr. 333 (noting plaintiff becomes winded and cannot walk up stairs), with Tr. 622 ("She is able to climb 3 flights of stairs with no problems. She has no chest pain, SOB, orthopnea, palpitations, presyncope or syncope at regular work loads."); compare, Tr. 333 (describing plaintiff's hands as "swollen achy and blue"), and Tr. 335 ("I also had seen her with lots of pain on her hands and wrist[.]"), with Tr. 475 (examination noting "[m]ild erythema ... of second third MCP and PIP joints of the right hand"), and Tr. 639 ("She did have full range of motion of her axial and peripheral joints without any

active synovitis, erythema, or warmth."). Indeed, at least one other court in this Circuit has affirmed an ALJ's credibility assessment of lay testimony that used the same language as that at issue here, and where, inter alia, the lay "testimony was simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." Petrongelli v. Colvin, No. 1:15CV00057(MAT), 2017 WL 3976307, at *4 (W.D.N.Y. Sept. 11, 2017). Thus, the facts of this case are more comparable to Petrongelli than Taylor, and the Court finds no error in the ALJ's use of the language with which plaintiff takes issue.

Plaintiff also asserts that the ALJ erred by discounting the statements of Ms. Lopez and Ms. Soler "by virtue of their relationship with Plaintiff[.]" Doc. #20-1 at 11 (citing Tr. 24). "While plaintiff may be correct in arguing that the ALJ cannot simply reject [the lay] testimony because [the witness] is inherently biased in [plaintiff's] favor, the ALJ in this case rejected the testimony because it was not consistent with the evidence. ... Social Security Ruling [06-03p] specifically allows this as a basis for rejection of the testimony." Werts v. Comm'r of Soc. Sec., No. 5:13CV0914(LEK)(ATB), 2014 WL 6078434, at *13 (N.D.N.Y. Nov. 13, 2014); accord Petrongelli, 2017 WL

3976307, at *4. Accordingly, the Court finds no error in the ALJ's consideration of the lay witness's potential bias.

Thus, for the reasons stated, the ALJ appropriately considered the statements by Ms. Soler and Ms. Lopez.

**VI.  CONCLUSION**

For the reasons set forth herein, plaintiff's Motion to Reverse or Remand an Administrative Agency Decision **[Doc. #20]** is **DENIED,** and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #27]** is **GRANTED.**

SO ORDERED at New Haven, Connecticut, this 30th day of April, 2019.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE